## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERSHEY CREAMERY COMPANY,<br>    Plaintiff | :<br>: |
| | : C.A. No. 1:18-CV-1094 |
| v. | :<br>: |
| LIBERTY MUTUAL FIRE INSURANCE<br>COMPANY and LIBERTY INSURANCE<br>CORPORATION,<br>    Defendants | :<br>:<br>:<br>:<br>: JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Hershey Creamery Company, by and through its attorneys, Barley Snyder LLP, files the within Complaint as follows:

## THE PARTIES

1.    Plaintiff, Hershey Creamery Company ("Hershey Creamery") is a Delaware corporation with its principal place of business located at 301 South Cameron Street, Harrisburg, Pennsylvania.

2.    Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") is a Wisconsin Corporation with its principal place of business located at 175

Berkeley Street, Boston, Massachusetts.  Liberty Mutual is authorized to conduct insurance business in this state and district and regularly conducts business in, and issues policies of insurance in, this state and district.

3.     Defendant Liberty Insurance Corporation is an Illinois Corporation with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts.  Liberty Insurance Corporation is authorized to conduct insurance business in this state and district and regularly conducts business in, and issues policies of insurance in, this state and district. (Liberty Mutual and Liberty Insurance Corporation are sometimes hereinafter referred to as "Liberty").

## PRELIMINARY STATEMENT

4.     This is an action for declaratory judgment, breach of contract and insurance bad faith seeking a determination of the respective rights and responsibilities of the parties with regard to liability insurance policies issued by Liberty to provide coverage to Hershey Creamery.  Specifically, Hershey Creamery seeks a determination that Liberty Mutual and Liberty Insurance Corporation owe duties to defend and indemnify Hershey Creamery in a lawsuit filed by F'real Foods, LLC ("F'real") in the United States District Court for the District of Delaware styled F'real Foods LLC v. Hamilton Beach Brands, Inc., Hershey Creamery Company and Paul Mills, d/b/a Mills Brothers Markets, C.A. No. 14-1270.  (This action was subsequently consolidated with a related action styled F'real Foods LLC and Rich

Products Corporation v. Hamilton Beach Brands, Inc., et. al., C.A. No. 16-41-GMS. (The consolidated actions are hereinafter referred to as the "Delaware Action").

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and 28 U.S.C. §2201 as an action for declaratory relief and because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     Venue is proper in this judicial district under 28 U.S.C. §1391(b) since the insurance policies at issue were issued to Hershey Creamery in this district, denial of coverage was communicated by Liberty to Hershey Creamery in this district, a substantial part of the events giving rise to this claim occurred in this district, and because Liberty Mutual and Liberty Insurance Corporation are subject to personal jurisdiction as residents of this district.

## BACKGROUND

7.     Since 1894, Hershey Creamery has been in the business of manufacturing and selling high quality ice cream and other frozen dessert products throughout the eastern United States.  In connection with that business, Hershey Creamery engages in substantial advertising, including point of sale sign advertising, utilizing various trademarks, designs and slogans.  Several such advertising slogans, used in connection with its "Shake Shop Express" milkshake products, and other products, make use of the words "Real Ice Cream," "Real Milkshakes," and "Real

- 3 -

6047823.1

Fast" together, to draw attention to the "Hershey Ice Cream" brand of ice cream and milkshake products. The phrases are intended to draw a distinction between the quality of Hershey Ice Cream's products and other "frozen dessert" products that use different and inferior ingredients, and to emphasize the convenience of purchasing Hershey Ice Cream's ready-made milkshake products. In so doing, this phrase enhances the recognition and reputation of the Hershey Ice Cream brand in the retail consumer marketplace.

8.       Another company that operates in a segment of Hershey Creamery's market for self-serve milkshakes that are available at various retail locations, including convenience stores, is F'real. Both Hershey Creamery and F'real offer frozen milkshake products that the consumer mixes himself/herself in the store using a self-serve mixer provided for that purpose. F'real claims that it advertises this product using slogans such as: "REAL Milkshakes are REAL Better", "Blend a F'REAL...For REAL" and "REAL Milkshakes, REAL Good", in which it alleges ownership rights. As will be more fully described below, F'real claims in the Delaware Action that Hershey Creamery has infringed on its advertising idea and slogans through Hershey Creamery's use of the words "Real Ice Cream," "Real Milkshakes," and "Real Fast" in connection with advertising for the competing self-serve milkshake products offered by Hershey Creamery. In essence, F'real claims

that Hershey Creamery's branding slogan and idea infringe upon F'real's allegedly similar branding slogans and ideas.

9. Hershey Creamery uses the allegedly infringing advertising ideas and slogans on its point of sale print advertising and signage, its website advertising, internet advertising, print advertising, and other media for which it pays to create, print, install and publish.

10. Although Liberty initially provided a defense to Hershey Creamery in the Delaware Action, it has withdrawn that defense and has indicated that it will neither defend nor indemnify Hershey Creamery for loss incurred in the Delaware Action.

## THE INSURANCE POLICIES

### A.    The Commercial General Liability Policies

11. Hershey Creamery sought to acquire adequate liability insurance from Liberty, which family of insurance companies has been Hershey Creamery's insurer for many years. As relevant to this litigation, Liberty Mutual issued Commercial General Liability Policies No. TB2-Z51-290933-022; TB2-Z51-290933-023; and TB2-Z51-290933-024 (the "CGL Policies") to Hershey Creamery for the policy periods September 1, 2012 to September 1, 2015, in three consecutive one year periods. Copies of these CGL Policies are attached hereto as Exhibits "A", "B", and "C", respectively. As relevant to this litigation, these policies provide "Personal and

- 5 -

Advertising Injury" coverage (discussed below) in the amount of $1 million per occurrence, $2 million in the aggregate.

12.     Liberty Insurance Corporation issued its Commercial Liability Umbrella Policy No. TH7-Z51-290933-044 to Hershey Creamery for the Policy Period September 1, 2014 to September 1, 2015, which, as applicable to the within litigation, provides for Personal and Advertising Injury coverage with an insurance limit in the amount of $20 million (the "Umbrella Policy"). A copy of the Umbrella Policy is attached hereto as Exhibit "D".

13.     As relevant to this litigation, the CGL Policies provided coverage for claims by third parties that Hershey Creamery infringed on the third party's "advertising ideas" and "slogans" in its advertising. As relevant to the present dispute, the CGL Policies all contain the following coverage provision:

> COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1.     Insuring Agreement
>
> > a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and *duty to defend the insured against any "suit" seeking those damages...."*

(CGL Policies, page 6 of 16) (emphasis added)

14.     The CGL Policies contain the following relevant definitions:

6047823.1

"Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

    a.    Announcements that are published include material placed on the internet or on similar electronic means of communication; and

    b.    Regarding websites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an "advertisement".

("Advertisement Redefined" Endorsement).

...

14.    "Personal and advertising injury" means injury...arising out of one or more of the following offenses:

...

    f.    The use of another's advertising idea in your "advertisement"; or

    g.    infringing upon another's copyright, trade dress *or slogan* in your "advertisement."

(CGL Policies, pages 13-15 of 16) (emphasis added).

15.    Although the CGL Policies contain exclusions for some types of trademark infringement, those exclusions do not apply to advertising idea or slogan infringement. In that regard, the CGL Policies contain an ambiguous and limited exclusion, which upon a reasonable reading by an insured such as Hershey Creamery, is not applicable to the facts of this dispute:

2.    EXCLUSIONS

This insurance does not apply to:

- 7 -

6047823.1

...

i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. *Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".*

*However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or <u>slogan</u>.*

(CGL Policies, pages 6-7 of 16) (emphasis added). Significantly, the words and phrases "use of another's advertising idea in your 'advertisement'" and "slogan" are ambiguous and undefined in the CGL Policies, and should be reasonably read, according to their ordinary meaning, to include Plaintiff's claims in the Delaware Action as referenced above. *See, e.g.,* American Heritage Desk Dictionary and Thesaurus 685 (2005) (defining "slogan" as "[a] phrase expressing the aims or nature of an enterprise, team, or other group; motto," or "[a] *catchword* used in *advertising* or *promotion*" (emphasis added)).

**B.    The Umbrella Policy**

16.    The Umbrella Policy issued by Liberty Insurance Corporation provides coverage for claims by third parties that Hershey Creamery infringed on the third party's "advertising ideas" and "slogans". As relevant to the present dispute, the Umbrella Policy contains the following coverage provisions:

SECTION I - COVERAGES

- 8 -

1.    Insuring Agreement

    a.    We will pay those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of:

        (3)    "Personal and advertising injury;" to which this insurance applies.

    b.    *We will have the right and duty to defend the insured against any "suit" seeking damages covered by this insurance,* by counsel of our choice, when:

        (1)    The total applicable limits of "underlying insurance" have been exhausted by payment of judgments or settlements: or

        (2)    The damages sought because of "bodily injury", property damage" or "personal and advertising injury" to which this insurance applies would not be covered by "underlying insurance" or "other insurance".

(Umbrella Policy page 1 of 30) (emphasis added).

    17.    Although the Umbrella Policy contains an exclusion for some types of trademark infringement, that exclusion does not apply to advertising idea or slogan infringement. In that regard, the Umbrella Policy contains an ambiguous and limited exclusion, which upon a reasonable reading by an insured such as Hershey Creamery, is not applicable to the facts of this dispute:

    2.    EXCLUSIONS

    This insurance does not apply to:

        …

    q.  Personal and Advertising Injury

"Personal and advertising injury":

. . .

(7)  Arising out of:

(a) Infringement of, or any other violation relating to copyright, patent, trademark, service mark, trade name, trade dress or other intellectual property right;

. . .

However, this Paragraph (7) *does not apply to:*

*(a) Infringement of copyright, trade dress or slogan, committed in your "advertisement;"*

*(b) The unauthorized use in your "advertisement" of another's idea for an "advertisement"...*

(Umbrella Policy, pages 3-9 of 30) (emphasis added).  Significantly, the words and phrases "use in your 'advertisement' of another's idea for an 'advertisement'" and "slogan" are ambiguous and undefined in the Umbrella Policy, and should be reasonably read to include Plaintiff's claims in the Delaware Action as referenced above.

## THE DELAWARE ACTION COMPLAINT

18.    On October 3, 2014, F'real filed its initial complaint in the Delaware Action.  A copy of this Complaint is attached hereto as Exhibit "E".  As relevant to the instant dispute, the Complaint asserted against Hershey Creamery claims for Infringement of a Federally Registered Trademark (Count V); Common Law Trademark Infringement (Count VI); Trade Dress Infringement (Count VII); Federal

Unfair Competition/False Designation of Origin (Count VIII); and Common Law

Unfair Competition (Count IX).

19.     Counts VII, VIII, and IX were dismissed by the Court.   However,

Counts V (Registered Trademark Infringement) and VI (Common Law Trademark

Infringement) were not dismissed and remain a part of the case.

20.     The Complaint contains numerous allegations of slogan and advertising

idea infringement in Hershey Creamery's advertising, including the following:

> 22.     In addition to the federally registered "F'REAL" trademarks, f'real uses the trademark "REAL MILKSHAKES ARE REAL BETTER" to identify the source of its milkshake products.  On July 8, 2013, f'real filed application number 86/004,047 to obtain a federal trademark registration for "REAL MILKSHAKES ARE REAL BETTER."   Recently, the U.S. Patent and Trademark Office issued a "Notice of Allowance" for f'real's application number 86/004,047.

> 23.     To help consumers quickly identify its milkshake products, particularly when customers enter convenience stores featuring those products, f'real has developed a distinctively presented display kiosk.  In many locations, f'real's product display kiosk has a blender with f'real signage sitting atop a merchandizing freezer with a see-through glass door.  Within the freezer, f'real's milkshake products are contained in generally cylindrical sealed cups neatly arrayed in rows and columns within the freezer.  The f'real display kiosk prominently features f'real's name with f'real advertising slogans like "Blend a F'REAL...for REAL" or "REAL Milkshakes, REAL Good."   A key part of f'real's advertising to identify and distinguish its products is the prominent use of the word "REAL."
> ***
> 28.     Also like f'real, the competing Hamilton Beach and Hershey Creamery kiosks have a blender with advertising signage sitting atop a merchandizing freezer with a see-through glass door.

Within the freezer, Hershey Creamery's milkshake products are contained in generally cylindrical sealed cups neatly arrayed in rows and columns within the freezer. Like f'real, the advertising signage makes repeated and prominent use of the word "REAL" in capital letters, including multiple references to "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST." Side-by-side photos of the Hamilton Beach/Hershey Creamery "Shake Shop Express" kiosk and the f'real kiosk are provided in attached Exhibit 8.

***

56. The use by Hamilton Beach, Hershey Creamery and Mills Brothers of the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks for competing blending machines and milkshakes constitutes a reproduction, copying, counterfeit and colorable imitation of f'real's federally registered "F'REAL" and "F'REAL" with swirl marks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

***

59. The use by Hamilton Beach, Hershey Creamery and Mills Brothers of the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks for competing blending machines and milkshakes constitutes a reproduction, copying, counterfeit and colorable imitation of f'real's "F'REAL," "F'REAL" with swirl and "REAL MILKSHAKES ARE REAL BETTER" marks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

21. The Complaint seeks damages, including attorneys' fees, from Hershey Creamery, and injunctive relief:

G. That defendants Hamilton Beach, Hershey Creamery and Mills Brothers, their officers, agents, servants, employees and all persons in active concert or participation with any of them, and their successors and assigns be temporarily, preliminarily and permanently enjoined from continuing to infringe f'real's trademark and trade dress rights, including continuing to use the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks or any confusingly similar variations thereof for their competing milkshake products and kiosks.

- 12 -

H.   That f'real be awarded compensatory, consequential, statutory and/or exemplary damages in an amount to be determined at trial for infringement of f'real's trademark and trade dress rights.

22.   Hershey Creamery provided timely notice of the claims asserted in the Delaware Action to Liberty and met and complied with any other conditions and obligations of an insured under the CGL and Umbrella Policies.

## LIBERTY'S BAD FAITH DENIAL OF COVERAGE

23.   Liberty initially provided Hershey Creamery with a defense under a reservation of rights. However, after Count VII ("Trade Dress Infringement") and Counts VIII and IX were dismissed by Order dated February 13, 2015, Liberty withdrew its defense of Hershey Creamery. The stated basis for Liberty's withdrawal of defense and denial of coverage was that the only covered claim, the trade dress infringement claim, had been dismissed: "The remaining Counts of the Complaint allege either patent or trademark infringement, neither of which qualify as enumerated offenses under the Policy's definition of 'personal and advertising injury.' Even if they did qualify as an enumerated offense, which Liberty denies, exclusion i. excludes coverage for patent and trademark infringement."

24.   In its declination of coverage and withdrawal of defense, Liberty reserved the right to assert that coverage was precluded under the Policies "for reasons not now foreseen or *because of discovery of facts not currently known to*

- 13 -

*Liberty.*"  For that reason: "Liberty reserves the right to modify its determination concerning coverage."

25.    Liberty further requested Hershey Creamery to submit any additional facts or other information in support of reconsideration of Liberty's position: "Liberty's position is based upon the facts that have been made available to us.  *If you have any additional information you would like us to consider concerning suit, please forward it to us.*"

26.    By letter dated April 4, 2016, then counsel for Hershey Creamery wrote to Gregory M. Rovnak, Liberty's Sr. Technical Claims Specialist.  In the letter, Hershey Creamery provided Liberty with "additional facts, information and case law" to demonstrate that coverage should exist under the Policies.

27.    Hershey Creamery's April 4, 2016 letter placed Liberty on notice that Hershey Creamery, in fact, utilized the above alleged words and phrases as "slogans", as defined under the Policies, in its advertising, including signage, meeting the conditions for defense and indemnity coverage under the Policies, and that F'real claimed Hershey Creamery's advertising, which used these slogans, was what was alleged to have infringed on F'real's slogan "REAL MILKSHAKES ARE REAL BETTER".  A true and correct copy of the April 4, 2016 letter is attached hereto as Exhibit "F".

28.    The communication from Hershey Creamery's attorneys to Liberty in
response to its request for additional facts was significant.  In the complaint filed in
the Delaware Action, F'real had broadly alleged:

> The *use* by Hamilton Beach, Hershey Creamery and Mills Brothers of
> the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL
> FAST" marks for competing blending machines and milkshakes
> constitutes a reproduction, copying, counterfeit and colorable imitation
> of f'real's "F'REAL," "F'REAL" with swirl and "REAL
> MILKSHAKES ARE REAL BETTER" marks in a manner that is likely
> to cause confusion or mistake or is likely to deceive consumers.

Delaware Action Complaint, para. 59 (emphasis added).  The complaint did not
purport to define all of the "uses" to which it claimed Hershey Creamery had put the
allegedly infringing slogan, and thus evidence of many types of allegedly infringing
activities might have been offered for admission in the Delaware Action.

29.    In Hershey Creamery's April 4, 2016 letter to Liberty, the "use" of
infringing slogans alleged by F'real in the Delaware Action complaint was explained
and put into factual context.  The letter demonstrated that Hershey Creamery's "use"
of the allegedly infringing slogan was not simply as infringing *trade dress*" (which
infringement claim had been dismissed by the Delaware Court) but through Hershey
Creamery's various forms of "advertising", including signage which claims were
effectively asserted in the Delaware Action and remained a part of that case
(paragraph 28 of the complaint specifically references Hershey Creamery's use of
the allegedly infringing slogans and ideas in its advertising signage).

- 15 -

30.   In response, on November 4, 2016, counsel for Liberty wrote to Hershey Creamery's then attorneys.  On behalf of Liberty, the letter stated that "As a starting point, the complaint filed by f'Real Foods, LLC ("f'Real") does not contain a claim for slogan infringement....  "Slogan infringement" is not alleged anywhere in the complaint.  In fact, although the complaint is comprised of 72 separate paragraphs plus an extended Prayer for Relief, the word "slogan" never appears anywhere in the complaint....  [We also reviewed briefing materials and the Order on the motion to dismiss.]  Once again, there is no reference to infringement of a slogan anywhere in these materials."  A true and correct copy of the November 4, 2016 letter is attached hereto as Exhibit "G".

31.   Liberty's assertion in the November 4, 2016 letter is simply false and demonstrates that Liberty either recklessly did not even read the allegations of the complaint, or intentionally ignored its plainly stated allegations.  Paragraph 23 of the Delaware Action complaint, quoted in full above, contains the following allegation: "The f'real display kiosk prominently features f'real's name with *f'real advertising slogans like 'Blend a F'REAL...for REAL' or 'REAL Milkshakes, REAL good.'*  A key part of f'real's advertising to identify and distinguish its products is the prominent use of the word 'REAL'" (emphasis added).  In addition Liberty ignored the information provided by Hershey Creamery that the alleged infringing slogans

asserted in the Delaware Action were in fact utilized in advertising by Hershey Creamery.

32.    Liberty's November 4, 2016 letter then argued that use of the word "REAL" alone by Hershey Creamery could not be considered to be "slogan infringement" and that F'real's trademarked name "F'REAL" was not a slogan that was subject to coverage under the Policies.   Again, Liberty recklessly or intentionally ignored the allegations of the complaint clearly asserting that Hershey Creamery had infringed F'real's *multiple worded slogans alleged in the complaint including those referred to in paragraph 23 thereof through the "use by Hamilton Beach, Hershey Creamery and Mills Brothers of the 'REAL ICE CREAM,' 'REAL MILKSHAKES' and 'REAL FAST'[multiple worded] marks."*

33.    Liberty gave no other reason for its improper denial of coverage in the November 4, 2016 letter, but reserved the right to look for other reasons to deny coverage under the Policies.

34.    As a result of Liberty's refusal to defend Hershey Creamery in the Delaware Action, Hershey Creamery has sustained substantial damages in the form of the costs, expenses and legal fees incurred in defending itself in the Delaware Action.

6047823.1

## CLAIMS FOR RELIEF

## COUNT I
## DECLARATORY JUDGMENT (LIBERTY MUTUAL)

35.     Paragraphs 1-34 are incorporated herein by reference as if set forth in full herein.

36.     In this count, Hershey Creamery seeks a declaratory judgment pursuant to 28 U.S.C. §2201, *et. seq.*, for the purpose of determining a question in actual controversy between the parties as more particularly set forth herein. Specifically, Hershey Creamery seeks a judicial determination that Liberty Mutual owes Hershey Creamery a duty to defend and indemnify under the CGL Policies with respect to the claims asserted in the Delaware Action.

37.     Liberty Mutual is obligated under the CGL Policies to defend and indemnify Hershey Creamery with respect to the claims asserted against it in the Delaware Action.

WHEREFORE, Plaintiff, Hershey Creamery Company respectfully requests that this Court issue an order:

A.     Declaring that Defendant Liberty Mutual Fire Insurance Company owes a duty to defend all claims filed against Hershey Creamery Company in the Delaware Action;

B.     Declaring that Defendant Liberty Mutual Fire Insurance Company owes a duty to indemnify Hershey Creamery Company for all loss arising from a finding of liability on Count VI (Common Law Trademark Infringement) in the Delaware Action;

- 18 -

C.   Declaring that Defendant Liberty Mutual Fire Insurance Company is liable for breach of contract for repudiating its obligations to defend and indemnify Hershey Creamery Company under the CGL Policies; and

D.   Granting such other relief available at law or in equity to which Plaintiff, Hershey Creamery Company may be entitled and for which it respectfully requests, together with costs of suit.

**COUNT II**
**DECLARATORY JUDGMENT (LIBERTY INSURANCE**
**CORPORATION)**

38.   Paragraphs 1-37 are incorporated herein by reference as if set forth in full herein.

39.   In this count, Hershey Creamery seeks a declaratory judgment pursuant to 28 U.S.C. §2201, *et. seq.*, for the purpose of determining a question in actual controversy between the parties as more particularly set forth herein.  Specifically, Hershey Creamery seeks a judicial determination that Liberty Insurance Corporation owes Hershey Creamery a duty to defend and indemnify it under the Umbrella Policy with respect to the claims asserted in the Delaware Action.

40.   Liberty Insurance Corporation is obligated under the Umbrella Policy to defend and indemnify Hershey Creamery with respect to the claims asserted against it in the Delaware Action.

WHEREFORE, Plaintiff, Hershey Creamery Company respectfully requests that this Court issue an order:

A.   Declaring that Defendant Liberty Insurance Corporation owes a duty to defend all claims filed against Hershey Creamery Company in the Delaware Action;

B.   Declaring that Defendant Liberty Insurance Corporation owes a duty to indemnify Hershey Creamery Company for all loss arising from a finding of liability on Count VI (Common Law Trademark Infringement) in the Delaware Action;

C.   Declaring that Defendant Liberty Insurance Corporation is liable for breach of contract for repudiating its obligations to defend and indemnify Hershey Creamery Company under the Umbrella Policy; and

D.   Granting such other relief available at law or in equity to which Plaintiff, Hershey Creamery Company may be entitled and for which it respectfully requests, together with costs of suit.

## COUNT III
## BREACH OF CONTRACT (LIBERTY MUTUAL)

41.   Paragraphs 1-40 are incorporated herein by reference as if set forth in full herein.

42.   Hershey Creamery was an insured under the CGL Policies and was entitled to a continued defense of the claims asserted in the Delaware Action.

43.   Liberty Mutual breached its obligations to Hershey Creamery under the CGL Policies by withdrawing its defense of the claims asserted in the Delaware Action and refusing to defend those claims, forcing Hershey Creamery to secure its own defense, and by failing to reimburse Hershey Creamery for its expense and costs of defense, including attorneys' fees.

6047823.1

44.     Liberty Mutual breached its obligations to Hershey Creamery under the CGL Policies by repudiating its obligations to indemnify Hershey Creamery for damages and loss sustained arising from liability for the claims of advertising idea and slogan infringement made in the Delaware Action.

45.     As a result of Liberty Mutual's actionable conduct, Hershey Creamery has sustained and continues to sustain damages in the form of attorneys' fees, litigation expenses and costs of suit, for which claim is hereby made.  In addition, Hershey Creamery seeks relief for damages it may sustain as a result of the claims asserted in the Delaware Action, for which Liberty Mutual has repudiated coverage.

WHEREFORE, Plaintiff, Hershey Creamery Company demands judgment in its favor and against Defendant Liberty Mutual Fire Insurance Company, in an amount in excess of $75,000, together with interest and costs of suit, and for such other relief as the court deems just.

### COUNT IV
### BREACH OF CONTRACT (LIBERTY INSURANCE CORPORATION)

46.     Paragraphs 1-45 are incorporated herein by reference as if set forth in full herein.

47.     Hershey Creamery was an insured under the Umbrella Policy and was entitled to a continued defense of the claims asserted in the Delaware Action.

6047823.1

48.    Liberty Insurance Corporation breached its obligations to Hershey Creamery under the Umbrella Policy by refusing to defend the claims asserted in the Delaware Action, forcing Hershey Creamery to secure its own defense, and by repudiating its obligations to reimburse Hershey Creamery for its expense and costs of defense, including attorneys' fees.

49.    Liberty Insurance Corporation breached its obligations to Hershey Creamery under the Umbrella Policy by repudiating its obligations to indemnify Hershey Creamery for damages and loss sustained arising from liability for the claims of advertising idea and slogan infringement made in the Delaware Action.

50.    As a result of Liberty Insurance Corporation's actionable conduct, Hershey Creamery has sustained and continues to sustain damages in the form of attorneys' fees, litigation expenses and costs of suit, for which claim is hereby made. In addition, Hershey Creamery seeks relief for damages it may sustain as a result of the claims asserted in the Delaware Action, for which Liberty Insurance Corporation has repudiated coverage.

WHEREFORE, Plaintiff, Hershey Creamery Company demands judgment in its favor and against Defendant Liberty Insurance Corporation, in an amount in excess of $75,000, together with interest and costs of suit, and for such other relief as the court deems just.

6047823.1

## COUNT V
## INSURANCE BAD FAITH (LIBERTY MUTUAL)

51.     Paragraphs 1-50 are incorporated herein by reference as if set forth in full herein.

52.     Liberty Mutual wrongfully, unreasonably and in bad faith refused to provide a defense to Hershey Creamery and wrongfully, unreasonably, and in bad faith repudiated its obligation to indemnify Hershey Creamery for loss covered under the CGL Policies as aforesaid.

53.     Liberty Mutual wrongfully, unreasonably and in bad faith failed to investigate the circumstances and context surrounding the claims asserted in the Delaware Action to determine whether any claims were conceivably covered under the allegations of the complaint, and in particular, ignored material information supplied by Hershey Creamery in response to Liberty Mutual's specific request for information, which information indicated that the claims asserted were covered under the CGL Policies.

54.     Pennsylvania law, at 42 Pa. C.S.A. §8371, provides that in an action under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take the following actions:

(a)     Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(b)     Award punitive damages against the insurer.

- 23 -

(c)     Assess court costs and attorney fees against the insurer.

55.    As a result of Liberty Mutual's acts, Hershey Creamery is entitled to an award of interest on its claim, at the rate of prime plus 3%, is entitled to an award of punitive damages, and is entitled to an award of court costs and attorney fees.

WHEREFORE, Plaintiff, Hershey Creamery Company demands judgment in its favor and against Liberty Mutual Fire Insurance Company in an amount in excess of $75,000, together with interest, punitive damages, costs of suit and attorneys' fees in an amount to be established by the Court.

## COUNT VI
## INSURANCE BAD FAITH (LIBERTY INSURANCE CORPORATION)

56.    Paragraphs 1-55 are incorporated herein by reference as if set forth in full herein.

57.    Liberty Insurance Corporation wrongfully, unreasonably and in bad faith refused to provide a defense to Hershey Creamery and wrongfully, unreasonably, and in bad faith repudiated its obligations to defend and indemnify Hershey Creamery for loss covered under the Umbrella Policy as aforesaid.

58.    Liberty Insurance Corporation wrongfully, unreasonably and in bad faith failed to investigate the circumstances and context surrounding the claims asserted in the Delaware Action to determine whether any claims were conceivably covered under the allegations of the complaint, and in particular, ignored material

6047823.1

information supplied by Hershey Creamery in response to Liberty Insurance Corporation's specific request for information, which information indicated that the claims asserted were covered under the Umbrella Policy.

59.   Pennsylvania law, at 42 Pa. C.S.A. §8371, provides that in an action under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take the following actions:

(a)   Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(b)   Award punitive damages against the insurer.

(c)   Assess court costs and attorney fees against the insurer.

60.   As a result of Liberty Insurance Corporation's acts, Hershey Creamery is entitled to an award of interest on its claim, at the rate of prime plus 3%, is entitled to an award of punitive damages, and is entitled to an award of court costs and attorney fees.

WHEREFORE, Plaintiff, Hershey Creamery Company demands judgment in its favor and against Liberty Insurance Corporation in an amount in excess of $75,000, together with interest, punitive damages, costs of suit and attorneys' fees in an amount to be established by the Court.

6047823.1

## JURY TRIAL DEMANDED

Plaintiff Hershey Creamery Company respectfully demands a trial by jury on all issues so triable.

Respectfully submitted,

BARLEY SNYDER LLP

By:   /s/ *Thomas A. French*
       Thomas A. French
       PA Attorney I.D. No. 39305
       William C. Boak
       PA Attorney I.D. No. 203506
       213 Market Street, 12th Floor
       Harrisburg, PA 17101
       Phone: (717) 231-6603
       Fax: (717) 291-4660
       tfrench@barley.com
       wboak@barley.com
       *Attorneys for Hershey Creamery Company*

6047823.1