# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HERSHEY CREAMERY COMPANY,** | : | CIVIL ACTION NO. 1:18-CV-694 |
| **Plaintiff** | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE CORPORATION,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Hershey Creamery Company ("Hershey") filed the instant action seeking declaratory judgment and alleging breach of contract by defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Liberty Insurance Corporation ("Liberty Insurance") (collectively, "defendants"). Hershey contends that defendants have a duty to defend and indemnify it in a pending lawsuit in the District of Delaware (the "Delaware Action") and breached certain insurance policies by claiming they had no such duties. Hershey moves for partial summary judgment regarding its claims against Liberty Mutual. (Doc. 14). Defendants move for summary judgment as to their duty to defend and indemnify in the Delaware Action. (Doc. 17). We will grant in part and deny in part Hershey's motion and deny defendants' motion in its entirety.

I.   **Factual Background & Procedural History**[1]

Hershey manufactures and sells ice cream and other frozen dessert products throughout the eastern United States. (Doc. 16 ¶ 1). In 2014, f'real Foods, LLC ("f'real") filed suit against Hershey and several other defendants in the United States District Court for the District of Delaware.[2] (Doc. 19 ¶ 9). F'real's complaint (the "Complaint") alleges patent infringement (Counts I, II, III, and IV); trademark infringement (Counts V and VI); trade dress infringement (Count VII); and unfair competition (Counts VIII and IX). (Id. ¶ 10; Doc. 5-5 ¶¶ 29-72). The gravamen of the Complaint is that Hershey and its codefendants unlawfully copied f'real's self-serve milkshake machine and related marketing designs, display, and verbiage. (See generally Doc. 5-5 ¶¶ 1-28).

Liberty Mutual initially defended Hershey subject to a reservation of rights. (Doc. 19 ¶ 11). Following dismissal of Counts VII, VIII, and IX, defendants notified

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 16, 19, 20, 24). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the Rule 56.1 statements.

[2] The 2014 lawsuit has been consolidated with a related action, F'real Foods, LLC v. Hamilton Beach Brands, Inc., No. 1:16-CV-41 (D. Del. 2016). See F'real Foods, LLC v. Hamilton Beach Brands, Inc., No. 1:14-CV-1270, Doc. 123 (D. Del. Apr. 12, 2016).

2

Hershey that they would no longer defend or indemnify Hershey in the Delaware Action. (Id. ¶¶ 12-13; see Docs. 5-6, 5-7, 5-8). According to defendants, the remaining claims do not implicate a duty to defend or indemnify under the pertinent insurance policies. (Doc. 5-5 ¶¶ 12-13; see Docs. 5-6, 5-7, 5-8).

The policies at issue are annual commercial general liability insurance policies between Liberty Mutual and Hershey spanning from September 2012 to September 2015 ("CGL policies") and a commercial liability umbrella insurance policy from September 2014 to September 2015 between Liberty Insurance and Hershey ("umbrella policy"). (Doc. 19 ¶¶ 1-2). The CGL policies are, for all practical purposes, identical. (See id. ¶¶ 3-6). The umbrella policy's relevant provisions likewise contain language and definitions identical to the CGL policies. (Id. ¶¶ 7-8).

Hershey filed the instant diversity action in March 2018 and amended its pleading the following month. Hershey seeks a declaration that defendants have a duty to defend and indemnify it in the Delaware Action (Counts I and II). Hershey also asserts breach of contract for defendants' withdrawal of their defense and alleged repudiation of their obligations under the CGL and umbrella policies (Counts III and IV). Hershey moves for summary judgment on its claims against Liberty Mutual (Counts I and III). Defendants move for summary judgment as to

their "duty to defend or indemnify Hershey" in the Delaware Action.[3]  (Doc. 17 at 1; Doc. 17-1).  The motions are fully briefed and ripe for disposition.

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently.  See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).  When doing so, the court is bound to view the evidence in the light most

---

[3] Defendants do not specifically reference Hershey's causes of action in their Rule 56 motion or briefing.  We presume that defendants seek summary judgment on every claim, as a finding of no duty to defend or indemnify would compel judgment in defendants' favor on all counts.

4

favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III. **Discussion**

The relevant facts are not in dispute. This case turns on a matter of law: whether the Complaint implicates a duty to defend under the CGL and umbrella policies. We set forth the pertinent policy provisions before turning to the parties' arguments.

### A. **Relevant CGL and Umbrella Policy Provisions**

The applicable "Insuring Agreement" in the CGL policies states as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "*personal and advertising injury*" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Doc. 19-1 at 21 (emphasis added)). This "personal and advertising injury" coverage is subject to numerous exclusions. (Doc. 19 ¶ 4; Doc. 19-1 at 21-22). Of particular relevance for the instant case, exclusion "i" precludes coverage for "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights," except for "the use of another's advertising idea in [the insured's] 'advertisement.'" (Doc. 19-1 at 21). Exclusion "i" also expressly provides that it does not apply to "infringement, in [the insured's] 'advertisement,' of copyright, trade dress or slogan." (Id.) Thus, subsection "i"

5

generally excludes coverage for injuries stemming from intellectual property infringement, but includes exceptions for (and thus expressly *provides* coverage for) injury from infringement of another's "advertising idea" or "copyright, trade dress or slogan" in the insured's "advertisement." (See id.) These two exceptions are mirrored in the definition of "personal and advertising injury," which specifically includes injury arising out of, *inter alia*, "[t]he use of another's advertising idea in [the insured's] 'advertisement'; or [i]nfringing upon another's copyright, trade dress or slogan in [the insured's] 'advertisement.'" (Id. at 29).

Finally, "advertisement" is defined in the CGL and umbrella policies as "a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Id. at 27; Doc. 19 ¶¶ 7-8). With these clauses in mind, we turn to the parties' dispute regarding whether defendants have a duty to defend or indemnify in the Delaware Action. The cross-motions for summary judgment raise the same legal issues concerning potential coverage, so we address the motions simultaneously.

### B. Duty to Defend

An insurer's duty to defend an insured in a suit brought by a third party is distinct from, and broader than, the duty to provide coverage. Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010) (citation omitted).[4] The

---

[4] The parties agree that Pennsylvania law governs the state-law issues in this diversity matter.

obligation to defend arises when "the factual allegations of the complaint on its face encompass an injury that is actually *or potentially* within the scope of the policy." Id. at 541 (emphasis added); Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987). Stated differently, so long as "the complaint might or might not fall within the policy's coverage," the insurer is obligated to defend. Jerry's Sport Ctr., Inc., 2 A.3d at 541 (citation and internal quotation marks omitted). When making this determination, the court is guided solely by the language and allegations of the underlying complaint. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) (citing Wilson v. Md. Cas. Co., 105 A.2d 304, 307 (Pa. 1954)). Those allegations must be taken as true and liberally construed, resolving any doubt as to whether the claims fall within the scope of the policy in favor of the insured. See Jerry's Sport Ctr., Inc., 2 A.3d at 541 (citation omitted); Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992) (citation omitted). "Where an insurer relies on a policy exclusion as the basis for its . . . refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999); Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).

Defendants assert that exclusion "i" precludes their duty to defend; therefore they bear the burden of establishing this defense. Madison Constr. Co., 735 A.2d at 106; Manross, 939 A.2d at 962. As defendants aptly summarize, insurance coverage is potentially triggered only if the Complaint asserts that Hershey infringed, *in its advertising*, on f'real's advertising idea, copyright, trade dress, or slogan. Any other

7

injury incurred from intellectual property infringement is excluded by the explicit terms of the policies. Hershey concedes that from this preceding list of applicable intellectual property, only "advertising idea" and "slogan" are possibly at issue. (See Doc. 15 at 10-15).

The gravamen of defendants' argument is that none of the allegations in the Complaint implicates infringement of f'real's intellectual property—whether advertising idea, slogan, or otherwise—in an "advertisement." Defendants recognize that the Complaint mentions Hershey's advertising several times but maintain that those allegations refer only to "advertising signage" in stores where the milkshake kiosks are located. In-store advertising signage, defendants contend, does not qualify as an "advertisement" as that term is defined by the policies, and therefore defendants have no duty to defend.

1. *Relevant Portions of the Complaint*

We look to the underlying Complaint, as our determination on the duty to defend is governed solely by the allegations therein. Kvaerner Metals, 908 A.2d at 896.[5] The parties largely agree on the applicable *allegata*, directing the court to paragraphs 22, 23, 27, 28, 56, and 59. We quote these paragraphs in full to avoid any unintended omission or confusion, except that paragraphs 56 and 59 are identical and require only a single recital.

> 22. In addition to the federally registered "F'REAL" trademarks, *f'real uses the trademark "REAL MILKSHAKES ARE REAL BETTER" to identify the source*

---

[5] Accordingly, we ignore Hershey's numerous citations to discovery material, as such material is irrelevant to our inquiry. See id.

8

*of its milkshake products.* On July 8, 2013, f'real filed application number 86/004,047 to obtain a federal trademark registration for "REAL MILKSHAKES ARE REAL BETTER." Recently, the U.S. Patent and Trademark Office issued a "Notice of Allowance" for f'real's application number 86/004,047.

23. To help consumers quickly identify its milkshake products, particularly when customers enter convenience stores featuring those products, f'real has developed a distinctively presented display kiosk. In many locations, f'real's product display kiosk has a blender with f'real signage sitting atop a merchandizing freezer with a see-through glass door. Within the freezer, f'real's milkshake products are contained in generally cylindrical sealed cups neatly arrayed in rows and columns within the freezer. The f'real display kiosk prominently features f'real's name *with f'real advertising slogans like "Blend a F'REAL...for REAL" or "REAL Milkshakes, REAL Good."* A *key part of f'real's advertising* to identify and distinguish its products *is the prominent use of the word "REAL."*

27. In addition to using f'real's patented blender technology, Hamilton Beach and Hershey Creamery have packaged their goods in containers and sold their products at retail kiosks that closely mimic those developed by f'real. For example as shown in the attached Exhibit 7, Hershey Creamery packages their competing frozen milk shakes in a plastic container that is comparable in size and shape to the plastic container f'real uses. Like the f'real milk shake containers, the Hershey Creamery milkshake containers *make prominent and repeated use of the word "REAL" in all capital letters, including "REAL MILKSHAKE" and "REAL ICE CREAM."*

28. Also like f'real, the competing Hamilton Beach and Hershey Creamery kiosks have a blender *with advertising signage* sitting atop a merchandizing freezer with a see-through glass door. Within the freezer, Hershey's milkshake products are contained in generally cylindrical sealed cups neatly arrayed in rows and columns within the freezer. Like f'real, *the advertising signage makes repeated and prominent use of the word "REAL" in capital letters, including multiple references to "REAL ICE*

9

> *CREAM," "REAL MILKSHAKES" and "REAL FAST."*
> Side-by-side photos of the Hamilton Beach/Hershey
> Creamery "Shake Shop Express" kiosk and the f'real
> kiosk are provided in attached Exhibit 8.
>
> 56. The *use* by Hamilton Beach, Hershey Creamery
> and Mills Brothers *of the "REAL ICE CREAM," "REAL
> MILKSHAKES" and "REAL FAST" marks for competing
> blending machines and milkshakes* constitutes a
> reproduction, copying, counterfeit and colorable imitation
> of f'real's federally registered "F'REAL and "F'REAL"
> with swirl marks in a manner that is likely to cause
> confusion or mistake or is likely to deceive consumers.

(Doc. 5-5 ¶¶ 22, 23, 27, 28, 56, 59 (emphasis added)).

As previously noted, the thrust of defendants' argument is that the only advertising specifically mentioned in the Complaint refers to "advertising signage" on Hershey's purportedly infringing kiosks. Defendants contend that such in-store advertising is not "a paid announcement that is broadcast or published in the print, broadcast or electronic media." (Doc. 18 at 2 (quoting Doc. 19-1 at 27)). Hershey counters that the phrase "published in the print . . . media" is broad enough to include slogans published on in-store advertising signage, or, at the very least, is ambiguous and should be construed in Hershey's favor.

We need not determine the meaning of "published in the print . . . media" or decide whether in-store advertising signage qualifies as an advertisement under that meaning. We find that, when f'real's allegations are read together and construed liberally in Hershey's favor, the Complaint implicates Liberty Mutual's duty to defend because the trademark infringement claims "might or might not fall within the policy's coverage." Jerry's Sport Ctr., Inc., 2 A.3d at 541.

### 2. *Implication of the Duty to Defend*

We begin by noting that the Complaint repeatedly emphasizes f'real's concern with infringement on its advertising ideas and slogans, which employ "prominent use" of the word "REAL." (See Doc. 5-5 ¶¶ 22, 23, 27, 28, 56, 59). Paragraphs 22 and 23 identify f'real's marketing slogans, including one that is trademarked, which utilize "REAL" as part of its advertising strategy. (Id. ¶¶ 22-23). Paragraph 23 specifically uses the phrase "advertising slogans" when discussing f'real's distinctive use of the word "REAL" in its advertising, setting the stage for its explanation, in paragraph 27, of how Hershey purportedly infringed by using "REAL" in its slogans for its similar products. (Id. ¶ 23). Paragraph 28 discusses Hershey's "advertising signage" that makes repeated use of the word "REAL." (Id. ¶ 28). This paragraph also identifies allegedly infringing advertising slogans that Hershey uses: "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST." (Id.)

Finally, paragraphs 56 and 59 assert trademark infringement (federal and common law, respectively) by broadly alleging "use" by Hershey of infringing slogans including "REAL ICE CREAM," "REAL MILKSHAKES," and "REAL FAST" for "competing blending machines and milkshakes[.]" (Id. ¶¶ 56, 59). These inclusive paragraphs provide no limiting language as to the type of wrongful trademark "use" for which Hershey is allegedly liable.

Defendants contend that if paragraphs 56 and 59 relate to advertising at all, they can only refer to advertisements specifically alleged earlier in the Complaint, *viz.*, in-store advertising signage. We disagree. A complaint is not a contract, and

11

we reject defendants' attempt to apply contract interpretation principles to f'real's pleading. (See, e.g., Doc. 21 at 6-7). Broad claims for trademark infringement—like in Counts V and VI of the Complaint, which generally allege improper use by Hershey of f'real's trademarks in Hershey's competing slogans—quite naturally could include infringement in advertising as well as in packaging and displays. And, in fact, f'real includes examples of such slogan infringement in advertising, packaging, and displays earlier in the Complaint, which f'real incorporates by reference.

Nothing in the Complaint or paragraphs 56 and 59 limits f'real's trademark infringement claims to only those specific instances of improper usage mentioned in previous paragraphs. After all, there is no requirement that a plaintiff exhaustively list every infringing act to plausibly state a claim for relief; complaints frequently contain nonexhaustive lists of allegedly wrongful conduct without limiting recovery to such occurrences, especially because discovery has not yet taken place. We reject defendants' assertion that, even though the Complaint repeatedly and broadly discusses slogan infringement in relation to advertising, the duty to defend is obviated because the specific infringement examples provided do not satisfy the insurer's own interpretation of the policy's definition of "advertisement." The law is to the contrary, obligating an insurer to defend if it is *possible* that a claim falls within the policy's coverage, and requiring any doubts on this score to be resolved in favor of the insured.

The Complaint makes clear that f'real believes Hershey infringed on f'real's advertising ideas and slogans, and specifically did so in the context of advertising

for "competing blending machines and milkshakes." This is a sufficient nexus between advertising and injury to trigger a duty to defend—it is at least possible that a covered "advertising injury" may be part of f'real's recovery against Hershey. We conclude that, in light of the broad nature of the allegations, and when liberally construing the Complaint in Hershey's favor, f'real's remaining claims "may *potentially* come within the coverage of the policy." Transamerica Ins. Co., 533 A.2d at 1368. Consequently, "until the claim[s are] confined to a recovery that the policy does not cover," Liberty Mutual has a duty to defend Hershey in the Delaware Action. Jerry's Sport Ctr., Inc., 2 A.3d at 542.[6]

### C. Breach of Contract

Hershey also moves for summary judgment on Count III, which asserts that Liberty Mutual breached its obligations under the CGL policies by withdrawing its defense in the Delaware Action and repudiating its potential indemnification obligation if Hershey were found liable. A breach of contract claim under Pennsylvania law consists of three elements: (1) the existence of a contract that includes its essential terms; (2) a breach of that contract; and (3) damages resulting from the breach. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted).

---

[6] Because there is a duty to defend in the Delaware Action but liability is not yet determined, we need not (and indeed cannot) address the parties' claims regarding indemnification. We further note that because the umbrella policy is only implicated if Hershey is found liable and the underlying CGL policy limits are exhausted, Liberty Insurance's duty to defend is not at issue at this time.

Neither party directly addresses the breach of contract claim. The contractual obligation allegedly violated is the duty to defend and the same CGL policy provisions are at issue, in particular the "Insuring Agreement" that states that Liberty Mutual "will have the right and duty to defend the insured against any 'suit' seeking" damages for "personal and advertising injury." (Doc. 19-1 at 21).

Hershey alleges that Liberty Mutual's withdrawal of its defense and continuing refusal to defend constitutes a breach of the CGL policies. (Doc. 5 ¶ 54). Liberty Mutual admits that it withdrew its defense, claiming it did so because it had no further duty to defend in the Delaware Action after Rule 12 motion practice. (See Doc. 15 ¶¶ 19-21; Doc. 20 ¶¶ 19-21). Because Liberty Mutual was wrong about its duty to defend, withdrawing its defense without first seeking declaratory judgment violated its obligations under the CGL policies. See Harrison v. Cabot Oil & Gas Corp., 110 A.3d 178, 184-85 (Pa. 2015) (citing RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. d (AM. LAW INST. 1981)). Accordingly, Hershey has satisfied its burden at summary judgment on the first two elements of its breach of contract claim.

The problem for Hershey is that it has not yet established the third element—damages. Hershey clearly *pled* that it suffered injury from Liberty Mutual's withdrawal and refusal to defend, (see Doc. 5 ¶¶ 54, 56), but bare allegations do not suffice at the Rule 56 stage, see FED. R. CIV. P. 56(c)(1); Celotex Corp., 477 U.S. at 323. We recognize that a finite loss amount for the failure to defend is likely unknown at this time. However, liability for breach of contract under Pennsylvania law requires proof of damages, and Hershey has not provided any Rule 56 support

14

for its allegations that it was harmed by Liberty Mutual's breach.  We thus are constrained to grant in part and deny in part Hershey's motion for summary judgment on Count III.  We will grant summary judgment as to establishment of Liberty Mutual's contractual obligation and breach, but deny—without prejudice—summary judgment as to the issue of damages resulting therefrom.  See <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.</u>, 137 A.3d at 1258; FED. R. CIV. P. 56(a).

## IV. <u>Conclusion</u>

For the reasons set forth herein, we will grant in part and deny in part Hershey's motion (Doc. 14) for partial summary judgment and will deny in its entirety defendants' motion (Doc. 17) for summary judgment.  An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: May 6, 2019